IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 2:08-CR-930-DCN |
| vs. ) | |
| ) | **SENTENCING ORDER** |
| DARRYL LEE JOHNSON, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

      This matter is before the court for the purpose of sentencing defendant Darryl Lee Johnson. For the reasons set forth below, the court finds that defendant is a career offender pursuant to the United States Sentencing Commission, Guidelines Manual, §4B1.1 (Nov. 2010) (hereinafter referred to as the United States Sentencing Guidelines or "USSG") and sentences him to 151 months in prison, five years of supervised release, and a $400 special assessment.

## I. BACKGROUND

      On November 12, 2008, in a superseding indictment, a federal grand jury charged defendant with the following: (1) one count of conspiracy to possess with intent to distribute and distribute a quantity of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), all in violation of 21 U.S.C. § 846 (Count 1); (2) three counts of possession with intent to distribute and distribution of a quantity of heroin, as well as aiding and abetting others in the same offenses, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2 (Counts 13, 27, and 32); and (3) one count of possession with intent to distribute and distribution of a quantity of heroin, in violation of 21 U.S.C.

1

§§ 841(a)(1) and 841(b)(1)(C) (Count 26).

On April 13, 2009, defendant pled guilty to Counts 1, 13, 26, and 32 pursuant to a written plea agreement. The United States Probation Office (USPO) subsequently prepared a presentence report (PSR). Defendant submitted one objection to the PSR report, which the USPO accommodated by revising the report. The government also submitted one objection, arguing that defendant's August 11, 2008 assault and battery of a high and aggravated nature (ABHAN) conviction should count as a prior "crime of violence" conviction, which, in conjunction with a January 22, 2004 felony drug conviction, would classify him as a career offender under USSG §4B1.1.[1]

On August 13, 2010, the government filed a sentencing memorandum, reiterating its objection that the USPO failed to properly classify defendant as a career offender. Despite the fact that defendant's last known overt act in the instant heroin conspiracy took place on July 17, 2008, several weeks prior to his August 11, 2008 ABHAN conviction, the government argues that his membership in the conspiracy continued because he failed to affirmatively withdraw from the conspiracy, citing United States v. West, 877 F.2d 281, 289 (4th Cir. 1989). The government asserts that defendant failed to withdraw from the conspiracy prior to August 11, 2008, and that letters he sent to his father and co-conspirator, Rufus Johnson, while both were in pre-trial custody, evidence his continued participation in the conspiracy beyond that date. In the alternative, the government requests that the court upwardly vary from the twenty-four to thirty month

---

[1] Neither party disputes that defendant's January 22, 2004 conviction for possession with intent to distribute marijuana in Georgetown County, South Carolina, qualifies as a "prior felony conviction of . . . a controlled substance offense" under USSG §4B1.1(a).

guideline range recommended by the USPO and sentence defendant to the statutory maximum of twenty years in prison because he breached his plea agreement "by lying to the government, obstructing justice, and refusing to testify as he had agreed to in the trial of David Brown and Rufus Johnson." Gov't Sentencing Mem. 1, 5-6.

On August 17, 2010, defendant filed a response in opposition to the government's sentencing memorandum, raising several arguments. First, relying on the authority of <u>United States v. McFalls</u>, 592 F.3d 707 (6th Cir. 2010), defendant argues that his ABHAN conviction should not count as a "crime of violence" under §4B1.1. Defendant states, "South Carolina's definition of [ABHAN] does not involve the same elements as generic aggravated assault because it has no element of intent and could be committed with mere recklessness." Resp. Opp'n 3. Second, defendant asserts that his ABHAN conviction should not count as a prior conviction of a crime of violence because it occurred after his last known overt act in the conspiracy, and thus, he was no longer involved in the conspiracy. Third, applying the same logic found in his second argument—that he was no longer involved in the conspiracy at the time of his ABHAN conviction—defendant asserts that the court should deduct two criminal history points awarded to him pursuant to USSG §4A1.1(d) for being on probation for the ABHAN offense at the time he committed the instant federal offenses.

Fourth, defendant states that the criminal history point awarded to him for committing the instant federal offenses within two years of being released from imprisonment on a prior offense pursuant to USSG §4A1.1(e) should be deducted from his criminal history calculation because the United States Sentencing Commission voted

to eliminate that subsection. Fifth, defendant argues that if the court determines that he is a career offender, the court should fashion a downward departure that does not exaggerate his criminal history. Sixth, defendant argues that the court's 18 U.S.C. § 3553(a) analysis should focus on subsections (a)(1), "the nature and circumstances of the offense and the history and characteristics of the defendant," and (a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," taking into account that his refusal to testify against his father in violation of his plea agreement was based on a "genuine fear of reprisal" and that other co-defendants who were found guilty of similar conduct in the same case have already completed their brief prison sentences. Resp. Opp'n 9.

On August 19, 2010, defendant appeared before the court for sentencing. During the hearing, the parties repeated the arguments set forth in their briefs. Defendant testified at the hearing, and his mother also addressed the court. Defendant admitted that he sold drugs; apologized to his community, family, and the court; and stated that he accepts responsibility for his actions. At the conclusion of the sentencing hearing, the court sustained the government's objection and found defendant to be a career offender pursuant to §4B1.1. The court orally imposed the sentence of 151 months in prison for each of the four counts, all such terms to run concurrently; five years of supervised release for each of the four counts, all such terms to run concurrently; and a $400 special assessment. The court now issues this written order.

## II. DISCUSSION

A defendant is classified as a career offender under §4B1.1 if he meets the following requirements:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG §4B1.1(a).

The parties do not dispute that defendant was at least eighteen years old at the time he committed the instant federal offenses, and as noted above, the parties do not dispute that defendant's January 22, 2004 possession with intent to distribute marijuana conviction counts as a prior felony conviction of a controlled substance offense. Consequently, the court must determine first, whether defendant's South Carolina ABHAN conviction qualifies as a crime of violence, and second, whether that conviction occurred prior to the conclusion of defendant's participation in the instant heroin conspiracy.

### A.     ABHAN is a "Crime of Violence" in South Carolina.

> The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year, that –
>
> > (1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2)     is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG §4B1.2(a).

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault,[2] forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device), or, by its nature, presented a serious potential risk of physical injury to another.

USSG §4B1.2, comment. (n.1) (emphasis in original).

Under South Carolina law, the crime of ABHAN is the "unlawful act of violent injury to another accompanied by circumstances of aggravation." State v. Fennell, 531 S.E.2d 512, 516 (S.C. 2000) (citations omitted). Circumstances of aggravation include

> the use of a deadly weapon, the intent to commit a felony, infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in gender, the purposeful infliction of shame and disgrace, taking indecent liberties or familiarities with a female, and resistance to lawful authority.

Id. at 516-17 (citations omitted).

Using the categorical approach, "which takes into account only the definition of the offense and the fact of conviction," United States v. Pierce, 278 F.3d 282, 286 (4th Cir. 2002), the Fourth Circuit has repeatedly held that the crime of ABHAN in South Carolina constitutes a "crime of violence." See United States v. Stewart, No. 09-4512, 2010 WL 1006915, at *1 (4th Cir. Mar. 19, 2010) ("Stewart's prior convictions for pointing a firearm at another person, lynching, and [ABHAN] . . . involve 'purposeful, violent, and aggressive conduct.' The district court correctly determined that Stewart

---

[2] It seems to the court that the difference between "aggravated assault" and "assault and battery of a high and aggravated nature" is semantic, at best.

6

qualified for sentencing as an armed career criminal."); United States v. Jones, No. 08-4387, 2009 WL 434869, at *1 (4th Cir. Feb. 20, 2009) (Under 18 U.S.C. § 924(e)(2)(B) and USSG §4B1.2(a)(1) (2007), ABHAN is a violent crime because it is a crime "that 'has as an element the use, attempted use, or threatened use of physical force against the person of another' or 'otherwise involves conduct that presents a serious potential risk of physical injury to another.'"); United States v. Brunson, No. 07-4962, 2008 WL 4180057, at *2 (4th Cir. Sept. 11, 2008) (ABHAN is "clearly" a crime of violence "for the purposes of the designation as an Armed Career Criminal or a Career Offender."); United States v. White, No. 07-4350, 2007 WL 2963710, at *2 (4th Cir. Oct. 10, 2007) (ABHAN is "by [its] nature" a violent crime.); United States v. Velez, No. 04-4742, 2006 WL 372634, at *1 (4th Cir. Feb. 15, 2006) ("Velez's conviction for ABHAN meets the sentencing guideline's definition of a crime of violence because ABHAN is, by definition, aggravated assault."); United States v. Cruz-Ortiz, No. 05-4627, 2006 WL 1636736, at *2 (4th Cir. June 8, 2006) (The definition of ABHAN "inherently identifie[s] the offense as a crime of violence."). Accordingly, defendant's reliance on McFalls, a Sixth Circuit case, is misplaced, and the court finds that the crime of ABHAN in South Carolina is a "crime of violence" under §4B1.2(a).

      **B.**    **Defendant's ABHAN Conviction is a Prior Conviction of a "Crime of Violence."**

"A defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action. Withdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy."

7

West, 877 F.2d at 289.[3]  "[T]he burden is on [the defendant] to show that he withdrew from the conspiracy by affirmative action."  United States v. Watford, 894 F.2d 665, 670 (4th Cir. 1990) (citing United States v. Urbanik, 801 F.2d 692, 697 (4th Cir. 1986)).

While it is undisputed that defendant's August 11, 2008 ABHAN conviction occurred several weeks after his last known overt act in the conspiracy in which he was admittedly a participant, defendant has produced no evidence whatsoever that he withdrew from the conspiracy by affirmative action.  He merely wishes to rest upon the assumption that his last documented overt act qualifies as a withdrawal or an end to his involvement in the conspiracy.

Moreover, defendant's repeated communications with his co-conspirator and father, Rufus Johnson, while both were in pre-trial custody show that defendant continued to be an active participant in the conspiracy well after August 11, 2008.  On April 10, 2009, Drug Enforcement Administration (DEA) Special Agents interviewed defendant pursuant to a proffer letter, at which time defendant provided detailed information about his involvement in a heroin distribution conspiracy and information regarding the involvement of his co-conspirators.  On April 13, 2009, defendant signed a written plea agreement, in which he agreed to provide "full, complete and truthful information about all criminal activities about which he has knowledge" and "testify fully and truthfully" when requested to do so by the government.  Plea Agreement ¶ 8.  Following these

---

[3] In West, the Fourth Circuit rejected a defendant's argument that "his arrest constituted evidence of his withdrawal from the conspiracy" and "post-arrest evidence should not have been admissible absent an affirmative showing that [the defendant] somehow continued in his role as a conspirator from jail."  Id.

events, defendant sent Rufus Johnson a series of letters (Gov't Sentencing Mem., Exs. A-C), in which he stated that he would refuse to testify against Rufus Johnson or any of his co-conspirators and that he would tell the government that his prior statements were lies (Gov't Sentencing Mem., Ex. B).  In one letter, defendant even drafted and submitted a proposed written statement for Rufus Johnson to review; defendant stated that he was "going to run this across Gene [Brown] also."  Gov't Sentencing Mem., Ex. C.  In the statement, defendant describes his drug dealing activities with Gene Brown, and he states that Rufus Johnson did not participate in obtaining drugs from New York, which contradicted defendant's prior statements to the government and its investigators.  Id. The court finds that these written statements are clearly designed to protect a co-conspirator and obstruct justice, and thus, they reflect defendant's continued participation in the conspiracy long after his August 11, 2008 ABHAN conviction.

"[C]ontinued participation in a conspiracy after a felony conviction renders that conviction a prior felony conviction."  United States v. Elwell, 984 F.2d 1289, 1298 (1st Cir. 1993); see also United States v. Mungo, Nos. 06-4588, 06-4589, 06-4590, 2007 WL 4426642, at *1 (4th Cir. Dec. 17, 2007) ("[B]ecause the conspiracy continued after Mungo was convicted for the other offenses, those convictions can properly be considered 'prior felony convictions' for purposes of categorizing him as a career offender.") (quoting Elwell, 984 F.2d at 1298).

Based on the reasons above, the court sustains the government's objection and finds that defendant's August 11, 2008 ABHAN conviction is a prior conviction of a "crime of violence" under §4B1.1.  Pursuant to §4B1.1(b), defendant falls within

Criminal History Category VI. Pursuant to 21 U.S.C. § 841(b)(1)(C), defendant faces a maximum penalty of twenty years in prison for the offenses to which he pled guilty; therefore, his offense level is 29. The applicable advisory sentencing guideline range is 151 to 188 months in prison for each count.[4]

### C.     Defendant's Remaining Arguments

If, as the court has already determined, defendant is found to be a career offender, defendant argues that the court should fashion a downward departure that does not exaggerate defendant's criminal history, relying on the Fourth Circuit's decision in United States v. Adkins, 937 F.2d 947 (4th Cir. 1991). Defendant also argues that the court should focus its 18 U.S.C. § 3553(a) analysis on the sentencing factors found in subsections (a)(1) and (a)(6). The court finds no merit in either argument.

In Adkins, the Fourth Circuit held that

> a district court may, in an atypical case, downwardly depart where career offender status overstates the seriousness of the defendant's past conduct. We emphasize that such departures, like all departures, are reserved for the truly unusual case, and in deciding whether to depart, a district court should follow the procedure outlined in our prior cases.

937 F.2d at 952.

---

[4] Defendant's designation as a career offender under §4B1.1 renders moot defendant's arguments that the court should deduct two criminal history points awarded pursuant to §4A1.1(d) and one criminal history point awarded pursuant to §4A1.1(e). Regardless of whether these points were deducted from defendant's criminal history score, and recognizing that §4A1.1(e) as it existed in 2009 was eliminated from the USSG on November 1, 2010, §4B1.1(b) dictates that "[a] career offender's criminal history category in every case under this subsection *shall be Category VI*." (Emphasis added). Thus, these proposed deductions would have no impact on defendant's criminal history category.

At the ages of eleven and twelve, defendant was arrested twice for simple assault and battery. Prior to the age of sixteen, he was arrested for damaging or tampering with vehicles, driving without a license, use of a vehicle without consent, resisting arrest, failure to stop for a blue light, and burglary 3rd degree. As an adult, he was convicted of breaking and entering a motor vehicle, giving false information, possession with intent to distribute marijuana, possession of cocaine, and ABHAN by the age of twenty-four. The severity of crimes and degree of violence committed by defendant during his criminal career continued to escalate up to the time of his arrest for the instant federal offenses, and defendant has offered no justification, aside from reciting his adult convictions, as to why the court should consider his "an atypical" or "truly unusual case" worthy of a downward departure. Id. "A career criminal is incorrigible, undeterrable, recidivating, unresponsive to the 'specific deterrence' of having been previously convicted." United States v. Belton, 890 F.2d 9, 10 (7th Cir. 1989). The court finds that defendant aptly falls within this characterization.

The court has considered all of the sentencing factors listed in 18 U.S.C. § 3553(a) and finds that none of the factors warrant a sentence below the advisory guidelines range. Defendant's argument regarding subsection (a)(1), "the nature and circumstances of the offense and the history and characteristics of the defendant," is unavailing. Defendant was admittedly part of a heroin distribution conspiracy and has an extensive criminal history. During the sentencing hearing, defendant admitted that he breached his plea agreement, a breach that can be described as no less than "flagrant" after reading the letters defendant mailed to his father and co-conspirator, Rufus Johnson.

Defendant argues that he refused to testify against Rufus Johnson and David Brown because he had a "genuine fear of reprisal," comparing his situation to that of the defendant in United States v. Banks, 942 F.2d 1576 (11th Cir. 1991). Resp. Opp'n 9. In Banks, the Eleventh Circuit held that

> a defendant charged with obstructing justice for refusing to testify may, within a narrow range of unusual and extreme circumstances, be entitled to acquittal upon proof that his refusal was based solely upon a realistic and reasonable perception that giving testimony would result in imminent harm to the safety of the witness or members of his family.

942 F.2d at 1579. In Banks, there was evidence that the defendant was vulnerable because he was in a prison "in which other 'snitches' had been murdered," his life had been directly threatened, and during the time when he was being "urged to testify," "the home of a close family member was sprayed with machinegun fire." Id.

At the sentencing hearing in the instant case, defendant testified that he feared for his life when the government sought his cooperation, yet he admitted that he never expressed this fear to the Assistant United States Attorney or the DEA during any of their meetings, he never received any direct threats, he did not believe that his co-conspirator family members would hurt him, and by word of mouth, he had heard only one story involving a possible threat to his younger brother, Laquan Brunson, whom another co-conspirator, Joe Cauldwell, thought may have been cooperating with law enforcement. The court acknowledges that both a cooperating witness and his nephew were shot during the course of this case, and the nephew died as a result of his gunshot wounds. However, defendant testified that he knew Edward McCain, the individual who committed the murder and attempted murder, and defendant communicated with McCain on multiple

occasions afterward. Defendant testified that McCain admired him and was willing to serve prison time for him, and thus, the shooting incident does not appear to provide any impetus for defendant's alleged fear of reprisal.

Defendant, unlike the defendant in Banks, was unable to produce any evidence of direct threats against him or any of his close family members, much less the "unusual or extreme circumstances" envisioned by the Eleventh Circuit. None of the considerations above lead the court to believe that the factor in § 3553(a)(1) weighs in defendant's favor.

With regard to § 3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," defendant produces a single argument—"some of [his] co-defendants have already completed their prison sentences." Resp. Opp'n 10. This is an accurate statement; however, it discounts the fact that other co-defendants received lengthy prison sentences based on their criminal histories and other factors. For instance, co-defendant Gene Brown received a prison sentence of 118 months. His criminal history was not as extensive as defendant's, and according to the government, Gene Brown did not breach his plea agreement. Co-defendant Joseph Cauldwell satisfied the career offender requirements set forth at USSG §4B1.1, but his extensive cooperation, including testifying against David Brown and Rufus Johnson at trial and providing information leading to the arrest of Michael Strickland, led the government to file a motion for reduction of sentence pursuant to Federal Rule of Criminal Procedure 35(b). As a result, Cauldwell received a seventy-eight-month sentence. As a final example, co-defendant Michael Strickland faced a life sentence; however, he received a 144-month sentence

after cooperating with the government and receiving a reduced sentence pursuant to Rule 35(b). Even though these individuals cooperated with the government, they still received significant prison sentences based on their criminal histories. Defendant is unable to demonstrate that his classification as a career offender with an advisory sentencing guideline range of 151 to 188 months is disparate from other similarly situated co-defendants.

### III. CONCLUSION

After calculating and considering the advisory sentencing guidelines, and having also considered the relevant statutory sentencing factors contained in 18 U.S.C. § 3553(a),[5] it is the judgment of the court that defendant Darryl Lee Johnson is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 151 months as to each of the four counts, all such terms to run concurrently. Count 27 is dismissed upon the government's motion.

Upon release from imprisonment, defendant shall be placed on supervised release for a term of five years as to each of the four counts, all such terms to run concurrently. Within seventy-two hours of release from custody of the Bureau of Prisons, defendant shall report in person to the probation office in the district to which he is released.

---

[5] Of particular note, pursuant to § 3553(a)(2), the court finds that a sentence within the career offender guideline range is necessary to: (1) reflect the seriousness of the drug offenses committed by defendant, (2) promote respect for the law, particularly for one who so blatantly lied to the government, attempted to obstruct justice, and breached his plea agreement, (3) provide just punishment for the offense, (4) afford, at a minimum, general deterrence to the commission of similar drug crimes, and (5) protect the public from further crimes of defendant. 18 U.S.C. § 3553(a)(2)(A)-(C).

While on supervised release, defendant shall comply with the mandatory and standard conditions of supervision outlined in 18 U.S.C. § 3583(d). Defendant shall also comply with the following special conditions:

1. Defendant shall submit to substance abuse testing and/or treatment as approved by the United States Probation Officer until such time as the defendant is released from the program by the United States Probation Officer.

2. Defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

3. Defendant shall cooperate in the collection of DNA as directed by the USPO.

It does not appear that defendant has the ability to pay a fine; therefore, the fine is waived. Defendant shall pay the mandatory $400 special assessment fee due and payable immediately.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**January 31, 2011**
**Charleston, South Carolina**